UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FRANCISCO WILLS, :

    Petitioner, : Civil Action No. 11-2110 (FLW)

    v. : **OPINION**

GREG BARKOWSKI, et al., :

    Respondents. :

**APPEARANCES:**

Francisco Wills, *Pro Se*
497799
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Samuel J. Marzarella
Ocean County Prosecutor's Office
Courthouse Annex Bldg
119 Hooper Avenue
P.O. Box 2191
Toms River, NJ 08754-2191
Attorney for Respondents

**WOLFSON, District Judge**

    Petitioner Francisco Wills submitted this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court conviction, and Respondents submitted an answer to the petition (ECF No. 11), with the available state court record. Petitioner also filed a traverse to the answer (ECF No. 12) and a motion to file an

amendment to the petition which remains pending (ECF No. 13). For the following reasons, the motion and the petition will be denied.

**BACKGROUND**

The following facts are taken from Petitioner's "Statement of Facts" from his *pro se* Brief in Support of his Post-Conviction Relief ("PCR") petition. (*See* Respondents' Exhibit ("RE") E).

> During the evening of July 28, 2003, the defendant who was taking various prescription medications for depression, anxiety and pain, was extremely intoxicated on alcohol.
>
> At approximately 1:00 a.m. on July 29, 2003, the defendant entered the victim's apartment through an open window. He then entered the bedroom and sexually assaulted her while he was holding a knife. After thirty to forty minutes there was a struggle for the knife which ended up in the kitchen. The victim then grabbed the knife from the kitchen and stabbed the defendant. The victim received two superficial stab wounds to the abdomen and several other cuts. The struggle ended when the victim grabbed a towel and was able to run out the back door. While in the backyard she saw the defendant running down the street carrying his clothing.

(RE E at p. 2).

Petitioner was indicted and entered a guilty plea to first-degree attempted murder, contrary to *N.J.S.A.* 2C:11-3 and 2C:5-1, and first-degree aggravated sexual assault, contrary to *N.J.S.A.* 2C:14-2a. (RE L at p. 2). On Petitioner's appeal of the denial of PCR relief, the Appellate Division noted:

> During his plea hearing, defendant admitted that he gained entry to the victim's house through a window at approximately 1:00 a.m. He then accosted the victim and held a knife to her throat while he raped her several times.

> After the sexual assault, defendant stabbed the victim in
> the stomach with the purpose to kill her, so she could not
> testify against him. Defendant then fled the scene, but the
> victim survived.

(RE L at p. 2).

Petitioner was sentenced in accordance with the plea agreement to an aggregate term of imprisonment of twenty-seven years with an eighty-five percent parole disqualifier under New Jersey's No Early Release Act, *N.J.S.A.* 2C:43-7.2a. His sentence was upheld by the Superior Court of New Jersey, Appellate Division ("Appellate Division") on October 16, 2006. (RE L at p. 2; RE C). On February 23, 2007, the New Jersey Supreme Court denied Petitioner's petition for certification. (RE D).

Petitioner filed a motion for PCR relief in the trial court, raising two issues: (1) ineffective assistance of trial counsel in failing to investigate a potential intoxication defense; and (2) deprivation of his rights under Article 36 of the Vienna Convention on Consular Relations ("Vienna Convention") because New Jersey and his counsel did not arrange for him to be in contact with the Colombian Consulate while his criminal charges were pending. (RE E, F).

On November 3, 2008, the trial court denied PCR relief (RE H), and the denial was upheld by the Appellate Division on July 6, 2010 (RE L). On January 7, 2011, the New Jersey Supreme Court denied certification of Petitioner's petition for review. *See State v.*

*Wills*, 205 N.J. 77 (2011) (Table).

Petitioner filed this petition on or about April 13, 2011 (ECF No. 1). Respondents filed a Response and the relevant state court record on May 9, 2012 (ECF No. 11), to which Petitioner replied on July 3, 2012 (ECF No. 12). A Letter Motion by Petitioner to file an amended petition and waive exhaustion remains pending (ECF No. 13).

In his petition before this Court, Petitioner seeks relief under 28 U.S.C. § 2254, arguing: (1) he was denied his right to effective assistance of counsel when counsel failed to investigate and put forth a defense of voluntary intoxication, as well as when he did not ensure that Petitioner's rights under the Vienna Convention were upheld; (2) Petitioner was actually innocent of the attempted murder charge and the plea must be vacated; (3) The Vienna Convention was violated; and (4) an evidentiary hearing should be granted by this Court on Petitioner's claims.

In his Letter Motion (ECF No. 13), Petitioner "brings to this Court's attention that he was never informed of the deportation consequences of his guilty plea." (Brief in Support of Motion, p. 3). Citing *State v. Barros*, 425 N.J. Super. 329 (App. Div. 2012) and *Padilla v. Kentucky*, 559 U.S. 356 (2010), Petitioner argues that counsel was ineffective for failing to advise him of the deportation consequences and, as a result, his plea should be vacated. (Brief in Support of Motion, p. 11).

4

## DISCUSSION

**A. Section 2254 Cases**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits in state court proceedings, § 2254 further provides that the writ shall not issue unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."[1] *Id.* at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. *See id.* at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. *See Matteo v. Superintendent*, 171 F.3d 877, 890 (3d Cir. 1999); *see also Williams v. Ricci*, Civ. Action No. 09-1822 (DRD), 2012 WL 6554371, *14 (D.N.J. Dec. 14, 2012)(slip copy)(citing *Matteo*).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004) (citing *Early v. Packer*, 537 U.S. 3

---

[1] A state court decision also may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). *Id.* at 407-09.

6

(2002); *Woodford v. Visciotti*, 537 U.S. 19 (2002)), *cert. denied*, 543 U.S. 1093 (2005).

Finally, a *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A *pro se* habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010); *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998); *Lewis v. Attorney General*, 878 F.2d 714, 721-22 (3d Cir. 1989).

**B.** **Petitioner's Habeas Claims Will Be Denied.**

   **1.** **Ineffective Assistance of Counsel**

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. *See*

7

*Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 (3d Cir. 2012)(citing *Strickland*). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697.

With respect to the issues raised in the instant petition, the Appellate Division noted that the PCR court rejected Petitioner's assertions that trial counsel was ineffective and found that none of the issues raised by Petitioner in his challenge to the PCR division warranted reversal of the PCR court's determination. Citing to *Strickland* the Appellate Division found that a "hypothetical" intoxication defense would be "exceedingly unlikely to be fruitful" and further held:

> As to the claim of deprivation under the Vienna Convention, we underscore the critical failure of defendant to identify any specific prejudice flowing from the claimed failure to arrange his communication with the

8

> Colombian consulate before trial. *See, e.g., State v. Jang*, 359 N.J.Super. 85, 93, 819 A.2d 9 (App. Div.) *certif. denied*, 177 N.J. 492, 828 A.2d 919 (2003) (noting the importance of making more than a generalized claim of prejudice resulting from a violation of the Vienna Convention); *State v. Cevallos-Bermeo*, 333 N.J. Super. 181, 185-86, 754 A.2d 1224 (App. Div.), *certif. denied*, 165 N.J. 607, 762 A.2d 221 (2000) (same). Defendant, after his arrest, had the services of an able criminal defense attorney at his disposal. That trial attorney negotiated a plea agreement-despite the brutal facts and the strong proofs of guilt-that substantially reduced defendant's potential aggregate forty-year exposure under the twenty-two count indictment. It is hard to imagine what more could have been feasibly done for defendant had he been placed in communication with the Colombian consulate.

RE L at pp. 5-6.

Here, the state court decisions were neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor were they based upon an unreasonable determination of the facts in light of the evidence presented. Lower federal courts have held, as did the Appellate Division, that to prevail on an ineffective assistance claim based on a violation of Vienna Convention rights, Petitioner must demonstrate that he was prejudiced by the lack of consulate contact. *See, e.g., Jang v. Ricci*, Civ. Case No. 10-2471 (MLC), 2011 WL 1043095 (D.N.J. Mar. 18, 2011); *McPherson v. Lavan*, Civ. Case No. 01-3499, 2002 WL 32341785 (E.D. Pa. Dec. 30, 2002). Moreover, for reasons explained in more detail below, federal courts have rejected similarly-pled Vienna Convention claims as without merit. *Cf. Lewis v. United States*, Civ. Case No. 10-1496 (SDW), 2011

WL 4352356 (D.N.J. Sept. 15, 2011). Thus, Petitioner is not entitled to relief on this claim.

### 2. Actual Innocence Claim

In Ground Two of the petition, Petitioner asserts that he is innocent of attempted murder because his intoxication negated the purposefulness required for the offense. A claim of "actual innocence" relates to innocence in fact, not innocence based on a legal, procedural defect. A litigant must present evidence of innocence so compelling that it undermines the court's confidence in the trial's outcome of conviction; thus, permitting him to argue the merits of his claim. A claim of actual innocence requires a petitioner to show: (a) new reliable evidence not available for presentation at the time of the challenged trial; and (b) that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence. *See House v. Bell*, 547 U.S. 518 (2006); *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This standard is extremely demanding and permits review only in the "extraordinary" case. *See House*, 547 U.S. at 536-37 (citing *Schlup*, 513 U.S. at 327).

In this case, the state courts concluded that an intoxication defense would not have been successful given the facts concerning Petitioner's actions during and after the incident. (RE L at pp. 3-4). Specifically, the court reasoned that "the failure to pursue a intoxication defense can be a violation of *Strickland*, but none of

those cited cases involved a situation like the present one with a negotiated plea and with scant indicia that an intoxication defense could have been successful." (RE L at p.5). More importantly, Petitioner presents no evidence that he is actually innocent of the crime to which he pled guilty. Clearly, based on the record and for the reasons cited above, Petitioner cannot meet the "extraordinary" standard set forth in *House* to require this Court to review his conclusory claim that he is actually innocent.

Additionally, this Court notes that habeas relief is not available "for an alleged error in the interpretation or application of state law." *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, even if the state courts misapplied New Jersey law, no constitutional rights were implicated, a necessary requirement to obtain habeas relief. *See* 28 U.S.C. § 2254(d)(1)). This claim will be denied.

**3. Vienna Convention Claim**

In Ground Three of the petition, Petitioner claims that the Colombian Consulate should have been informed of his arrest under the Vienna Convention. Citing *State v. Jang*, 359 N.J. Super. 85, 93 (App. Div.), *certif. denied*, 177 N.J. 492 (2003), the state court found that there was no prejudice to Petitioner given his favorable plea agreement and sentence. (RE L at p. 6).

The United States is a signatory to the Vienna Convention on Consular Relations ("Vienna Convention"), April 24, 1963, 21 U.S.T.

77, 101 T.I.A.S. No. 6820, 596 U.N.T.S. 261, 1967 WL 18349, which came into force on April 24, 1964, and which was ratified by the United States on October 22, 1969. *See* Cong. Rec. 30997 (1969). The Preamble states that "the purpose of such privileges and immunities [set forth herein] is not to benefit individuals, but to ensure the efficient performance of functions by consular posts on behalf of their respective States." *Id.*

Article 36 of the Vienna Convention provides, in pertinent part:

> 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State: ...
>
> (b) if [a detained person] so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph;
>
> (c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation ....
>
> 2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

Vienna Convention, Article 36.

The provisions of Article 36 have been implemented in federal regulations, including 28 C.F.R. § 50.5(a)(1) which provides: "In every case in which a foreign national is arrested the arresting officer shall inform the foreign national that his consul will be advised of his arrest unless he does not wish such notification to be given." *See also* 28 C.F.R. § 50(a)(2) (requiring the arresting agent to inform the U.S. Attorney of the arrest and of the arrestee's wishes regarding consular notification); 28 C.F.R. § 50.5(a)(3) (directing the United States Attorney to notify the appropriate consul in accordance with the arrestee's wishes); 8 C.F.R. § 236.1(e) (requiring the INS to notify every detained alien of the right to communicate with consul).

In this case, the state courts reviewed Petitioner's Vienna Convention argument and found that Petitioner failed to show prejudice as a result of not being apprised of his consular rights. (RE L). This failure is critical because despite the fact that lower courts are split on the issue of whether the Vienna Convention confers individual rights on arrestees to contact the consulates of their home countries, the United States Supreme Court requires a showing of actual prejudice. *See Breard v. Greene*, 523 U.S. 371, 373 (1998).

Moreover, even if Petitioner's rights under the Vienna

13

Convention were violated, dismissal of his criminal indictment would not be the proper remedy for such a violation. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 339, 349 (2006) (stating Article 36 "secures only a right of foreign nationals to have their consulate informed of their arrest or detention--not to have their consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention"); *United States v. De La Pava*, 268 F.3d 157, 163 (2d Cir. 2001) ("[A] violation of Article 36 of the Vienna Convention on Consular Relations is not a basis for the dismissal of an indictment....").

Furthermore, since the Vienna Convention claim was adjudicated on the merits by the state courts, federal habeas relief is available to petitioner only if such adjudication "was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). This Court finds that the state courts did not unreasonably apply established federal law in reaching their decisions with respect to the Vienna Convention claim. In particular, the state courts found that Petitioner failed to demonstrate that he was actually harmed by the lack of consular notification concerning his arrest. In addition, as discussed above, Petitioner was provided with effective legal representation, and his constitutional rights were safeguarded. Thus, Petitioner has not demonstrated that the state court decisions,

when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. *See Matteo v. Superintendent*, 171 F.3d 877, 891 (3d Cir. 1999); *Lewis*, 2011 WL 4352356, *supra*; *United States v. Yeboah*, Civ. Case No. 09 Civ. 7410 (GEL), 2009 WL 3738790 (S.D.N.Y. Nov. 9, 2009). Accordingly, this claim for habeas relief is denied for lack of merit.

### 4. Request for Evidentiary Hearing

In Ground Four of his petition, Petitioner requests an evidentiary hearing before this Court based on the violation of his constitutional rights. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)(citation omitted). The Third Circuit has "interpreted this to require a petitioner to make a prima facie showing that would enable [him] to prevail on the merits of the asserted claim." *Morris v. Beard*, 633 F.3d 185, 196 (3d Cir. 2011) (citation and internal quotation marks omitted); *accord Han Tak Lee v. Glunt*, 667 F.3d 397, 406-07 (3d Cir. 2012). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief," no evidentiary hearing is required. *See Landrigan*, 550 U.S. at 474; *see also Han Tak Lee*, 667 F.3d at 406-07.

Here, for the reasons stated above in this Court's analysis of each of Petitioner's claims, Petitioner has not stated a claim appropriate for habeas relief. Thus, as no claims remain, Petitioner is not entitled to an evidentiary hearing.

C.  **Petitioner's Motion to Amend Regarding Deportation Claim**

On October 16, 2012, well after Respondents filed a Response to the instant petition, Petitioner filed a "Motion to Amend Petition for Habeas Corpus and Waive Exhaustion Requirement Based on Futility." (ECF No. 13). Respondents have not opposed the motion.

In the Declaration in support of this motion, Petitioner declares that he is a Columbian national, that trial counsel never informed him of the deportation consequences of his guilty plea, and that he would not have taken the plea offer if he had known he would be deported as a result. (ECF No. 13-1).

In support of his motion, Petitioner filed a brief, in which he states:

> In State v. Barros, -- N.J. Super. -- (App. Div. 2012), a case exactly on point with the instant matter, Judge Fisher stated, "federal judges in New Jersey are bound to [the Third Circuit decision in] Orocio, not [the decision in] Gaitan . . . . Consequently, noncitizens in defendant's position are likely entitled to federal habeas corpus relief when that relief is sought within the Third Circuit."

(ECF No. 13-2, at p. 12). He further argues that:

> . . . if Petitioner were required to file the Padilla issue in state court, [] the court would be required to deny his

16

issue, whereas in this Court, pursuant to Padilla/Orocio,
        Petitioner has a colorable claim for relief and most
        likely, the writ would issue.

(*Id.*).

Since the filing of this motion, the United States Supreme Court has decided the case of *Chaidez v. United States*, -- U.S.--, 133 S. Ct. 1103 (Feb. 20, 2013). In that case, the Supreme Court abrogated *United States v. Orocio*, 645 F.3d 630 (3d Cir. 2011), which held that the rule in *Padilla v. Kentucky*, 559 U.S. 356 (2010), requiring defense counsel to advise defendants of deportation risks of guilty pleas, applied retroactively. The Court made clear that "defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Chaidez*, 133 S. Ct. at 1113.

Here, Petitioner's conviction became final in May 2007, when his time for petitioning for certiorari to the Supreme Court on direct appeal expired. Thus, it is indisputable that Petitioner's conviction became final well before *Padilla* was decided on March 31, 2010, per the Supreme Court's decision in *Chaidez*, and *Padilla* does not apply retroactively to his case. Therefore, Petitioner's motion to amend will be denied.

### D. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A

certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability shall issue.

## CONCLUSION

For the reasons set forth above, the petition and pending motion are denied. No certificate of appealability will issue.

An appropriate order follows.

s/Freda L. Wolfson<br>
FREDA L. WOLFSON<br>
United States District Judge

Dated: May 22, 2013